# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

---

**HELEN DIANE McCARTHY,**

        **Plaintiff,**

  **v.**

**MICHAEL HEATH JOHNSON,**

        **Defendant.**

**Case No. 21-mc-4 (GMH)**

---

## <u>MEMORANDUM OPINION & ORDER</u>

More than 30 years ago, a Utah federal court awarded Plaintiff Helen Diane McCarthy[1] (now deceased and represented here by her estate) a multi-million-dollar default judgment against Defendant Michael Heath Johnson for violations of the Racketeer Influenced and Corrupt Organization ("RICO") Act, 18 U.S.C. § 1961 *et seq.* Defendant died in December 2020 and, in January 2021, Plaintiff registered the Utah judgment in this District pursuant to 28 U.S.C. § 1963. Since then, she has been seeking discovery through this Court to aid her in collecting that judgment, which, with accrued post-judgment interest, is now worth more than five times its original amount. Her most recent submission is an application for issuance of a letter of request seeking documents and testimony from Gordon Oldham, an attorney located in Hong Kong, whom Plaintiff alleges represents Defendant's estate and ultimately owns the property where Defendant was residing at the time of his death.[2] For the reasons that follow, the application is granted.

---

[1] Plaintiff's surname has also been spelled "McCarthey." *See, e.g.*, ECF No. 18-1 at 54, 86, 88, 97, 101. Here, because the pleading originating this case spells the name "McCarthy," *see* ECF No. 1, that is the spelling the Court uses.

[2] The relevant docket entries for purposes of this Memorandum Opinion & Order are: (1) Plaintiff's Motion for Issuance of Letters Rogatory (ECF No. 18), (2) Oldham's opposition (ECF No. 19). and (3) Plaintiff's reply (ECF No. 20). The page numbers cited herein are those assigned by the Court's CM/ECF system.

# I.    BACKGROUND

As the Court explained in an earlier opinion, "in 1987, Plaintiff filed a civil RICO case in the United States District Court for the District of Utah against Defendant and others, claiming they had bilked her out of hundreds of thousands of dollars" by convincing her, while "she was suffering from mental illness and alcoholism, . . . to hand over control of her assets—including significant stock holdings in the Salt Lake Tribune Corporation and equity in a home in Bel Air, California—ostensibly to invest them." *McCarthy v. Johnson*, No. 21-mc-4, 2022 WL 3038862, at *1 (D.D.C. Aug. 2, 2022). Instead, however, Defendant and a confederate "fraudulently converted hundreds of thousands of dollars of her estate to [Defendant's] own use and to the use of . . . independent enterprises that themselves were fueled by the profits derived from the fraud." *Id.* (alteration in original) (quoting ECF No. 3-1 at 13). Plaintiff was ultimately awarded a default judgment of more than $6 million against Defendant in August 1990 (the "Utah Judgment"). *See id.*; *see also* ECF NO. 18-1 at 86–90. The Utah federal court renewed that judgment multiple times, and by the time that Defendant died in South Africa in December 2020, post-judgment interest "had . . . increased the value of the judgment to nearly $30 million." *McCarthy*, 2022 WL 3038862, at *1. When the judgment was most recently renewed, in December 2021, it was worth $31,543,922.57, and its value continues to increase at a rate of $3,094.55 per day. *See* ECF No. 18-1 at 101–02 (Order dated Dec. 20, 2021, renewing the operative judgment and stating that, as of December 15, 2021, the judgment was worth $31,543,922.57, and would accrue additional interest at a rate of $3,094.55 per day).

In January 2021, Plaintiff registered the judgment in this Court pursuant to 28 U.S.C. § 1963. ECF No. 1. Thereafter, her counsel contacted Oldham seeking information about Defendant, Oldham's "former client." ECF No. 18-1 at 104–05. She later purported to serve

Oldham, "individually and as the Senior Partner of Oldham, Li & Nie" (Oldham's Hong Kong law firm), with a subpoena under Rule 45 of the Federal Rules of Civil Procedure seeking information about the assets of Defendant's estate.  ECF No. 3 at 103–128; *see McCarthy*. 2022 WL 3038862, at *2, *5 n.10.  "That process was less fruitful than Plaintiff had hoped," and she therefore filed a motion for examination under Rule 69(a)(2) of the Federal Rules of Civil Procedure and Local Civil Rule 72.1(b)(6), requesting that this Court "'examine' Oldham 'about [Defendant's] assets available to satisfy' the Utah Judgment" and further require him "to produce a number of documents before any examination."[3]  *Id.* (quoting ECF No. 3-1 at 1).  The Court denied that motion, finding that it lacked personal jurisdiction over Oldham, "a nonparty foreign national residing in a foreign country," and therefore "lack[ed] the power necessary to haul [him] into court thousands of miles from his residence" for examination.  *Id.* at *5–6.  The Court thus found that "any discovery of Oldham must be accomplished, if at all, through the procedures set forth" in the Hague Evidence Convention on the Taking of Evidence Abroad in Civil or Commercial Matters, Mar. 18, 1970, 23 U.S.T. 2555 (the "Hague Evidence Convention").  *Id.* at *6.  The Hague Evidence Convention provides for three methods of taking evidence: "(1) by a Letter of Request or letter rogatory from a U.S. judicial authority to the competent authority in the foreign state . . . , (2) by an American or foreign diplomatic or consular officer or agent after permission is obtained from the foreign state, and (3) by a private commissioner duly appointed by the foreign state."[4]

---

[3] Meanwhile, the Court granted a motion to issue a letter of request to Defendant's alleged "financial and business advisor and accountant" in South Africa.  ECF No. 5 at 6; ECF No. 11.

[4] The terms "letter rogatory" and "letter of request" are often used interchangeably, but, according to the Restatement (Third) of Foreign Relations Law, "Letters rogatory addressed by courts of one state to courts of another state apart from the Hague Evidence Convention are essentially the same as letters of request submitted pursuant to the Convention; but execution of letters rogatory is voluntary or depends on bilateral agreement and ordinarily involves diplomatic channels, while execution of letters of request is required by treaty and does not involve diplomatic channels."  Restatement (Third) of Foreign Relations Law § 473 reporters' note 1 (Am. L. Inst. 1987).  The Court thus used the term "letter of request" herein but does not change the language of other courts that have used the term "letter rogatory."

*Id.* at *5 (alteration in original) (quoting *Tulip Computs. Int'l B.V. v. Dell Comput. Corp.*, 254 F. Supp. 2d 469, 472 (D. Del. 2003)).

Not long thereafter, Plaintiff filed the motion for issuance of a letter of request currently before the Court. The submission alleges that Oldham has confirmed to Plaintiff's counsel that he represents Defendant's estate and that he ultimately owns the property where Plaintiff was living at his death. ECF No. 18-1 at 7–8. More specifically, Plaintiff alleges that Holt Hill Farm, which was Defendant's "long-time home and place of death" is owned by a private South African company known as Surrounded Property Development Pty Ltd. ("Surrounded Property Development"), which is a wholly owned subsidiary of Resurface Investments Pty Ltd. ("Resurface Investments"), also a private South African company. *Id.* at 10. Resurface Investments is, in turn, a wholly owned subsidiary of a British Virgin Islands company called Project Design International Ltd. ("Project Design"), which is owned by Oldham.[5] *Id.* at 11. According to Plaintiff, Oldham was also the ultimate owner of the residence in which Plaintiff lived prior moving to Holt Hill Farm. ECF No. 20 at 5–6. Further, Plaintiff alleges that Oldham was Defendant's "personal counsel throughout the RICO litigation" that resulted in the Utah Judgment that Plaintiff seeks to enforce.[6] ECF No. 18 at 11. Oldham has not disputed any of these facts.

Plaintiff seeks documents from Oldham, "individually, as Senior Partner of Oldham, Li &

---

[5] Surrounded Property Development, Resurface Investments, and Project Design are referred to collectively herein as "the Oldham Companies."

[6] It is not clear whether Plaintiff alleges that Oldham represented Defendant in that litigation—and the docket from that case does not reflect such representation, *see* Docket, *McCarthy v. Johnson*, No. 87-cv-944 (D. Utah)—or rather that Oldham served as an attorney for Defendant on other matters during that time, such as when Defendant instructed Oldham's firm in 1989 (while that litigation was ongoing) to transmit Defendant's consent to the withdrawal of the attorney representing him in the Utah RICO action, *see* ECF No. 20 at 1–2, 17–18. In any case, Oldham has not disputed that he served as Defendant's attorney and, indeed, has asserted to Plaintiff's counsel that he represents Defendant's estate. *See* ECF No. 18-1 at 109–10.

Nie, and Owner of Project Design International Limited, a British Virgin Islands company, and its South African subsidiary, Resurface Investments (Pty) Limited" regarding (1) Oldham's control or ownership of property used by Defendant; (2) the creation, ownership, and control of Project Design; (3) financial accounts maintained by or for the benefit of Defendant; (4) monetary transfers between Defendant's financial accounts and Oldham's; (5) Defendant's assets and liabilities; (6) sources of money used by or for the benefit of Defendant; (7) transfers of money to or from Defendant; (8) loans from Oldham to Defendant; (9) financial instruments or contracts between Oldham and Defendant; (10) financial transactions between Oldham and Defendant; (11) Oldham's strategies and actions to protect Defendant's assets from enforcement of the Utah Judgment; and (12) money taken from Plaintiff by Defendant.  ECF No. 18-1 at 37–39.  She also seeks to depose Oldham on fourteen related topics: (1) identification of real and personal property used by Defendant; (2) the creation, ownership, and control of the Oldham Companies; (3) identification of financial accounts maintained by or for the benefit of Defendant; (4) any monetary transfers between financial accounts maintained by Defendant and financial accounts maintained by Oldham; (5) Defendant's assets and liabilities; (6) any sources of money used by or for the benefit of Defendant; (7) monetary transfers to or from Defendant's financial accounts; (8) loans made to Defendant by Oldham or the Oldham Companies to Defendant; (9) financial instruments or contracts between Oldham or the Oldham Companies and Defendant; (10) financial transactions between Oldham or the Oldham Companies and Defendant; (11) strategies and actions taken by Oldham or the Oldham Companies to protect Defendant's assets or income from collection pursuant to the Utah Judgment; (12) any transfers of money taken by Defendant from Plaintiff to Oldham or the Oldham Companies; (13) communications pertaining to any transfers of money taken by Defendant from Plaintiff to Oldham or the Oldham Companies; and (14) money taken by

Defendant from Plaintiff that was utilized by or for the benefit of Defendant.  *Id.* at 40–43.

Oldham opposes the application, arguing that this matter should not be in this Court because the case "originated in Utah 30 years ago and has no connection to this jurisdiction."  ECF No. 19 at 3.  More specifically, he asserts that neither the targets of the discovery nor the parties to this litigation have a connection to this District, "[n]o events related to the underlying suit or to the enforcement of the judgment have ever taken place in this jurisdiction," and no documents or evidence was created here.  *Id.* at 1–2.  He thus contends that this Court lacks the power to issue the requester letter rogatory.  *Id.* at 4.  He further maintains that the application should be denied because he responded to Plaintiff's informal requests for information and because Plaintiff has not established that he is likely to have relevant evidence.  *Id.* at 5–6.

## II.    LEGAL STANDARDS

The Hague Evidence Convention "allows judicial authorities in one signatory country to obtain evidence located in another signatory country 'for use in judicial proceedings, commenced or contemplated.'"  *Tulip Computs.*, 254 F. Supp. 2d at 472 (quoting Hague Evidence Convention, Art. 1.  The Hague Evidence Convention "has never ceased to be applicable between Hong Kong [Special Administrative Region] and the Contracting States to which it was applicable before Hong Kong was restored to the People's Republic of China."  Declaration/Reservation/Notification of the Special Administrative Region of Hong Kong, https://www.hcch.net/en/instruments/ conventions/status-table/notifications/?csid=493&disp=resdn (last visited Nov. 9, 2022). The United States is one of those Contracting States.  *See id.*   As noted, one of the methods that the Hague Evidence Convention provides for taking evidence abroad is a letter of request from a U.S. judicial authority to the competent authority in the foreign signatory state.  *See McCarthy*, 2022 WL 3038862, at *5.  "[L]etters rogatory are typically used when the party from whom discovery

6

is sought is 'beyond the jurisdiction' of the court and thus the party seeking the discovery is unable to take advantage of the discovery devices provides for in Rules 26 to 37 and 45." *Lantheus Med. Imaging, Inc. v. Zurich Am. Ins. Co.*, 841 F. Supp. 2d 769, 781 (S.D.N.Y. 2012).

"When weighing requests for international discovery—even requests pursuant to the Hague [Evidence] Convention—courts should not overlook factors relevant to international comity." *Jaguar Land Rover Ltd. v. DR. ING. H.C. F. Porsche AG*, No. 21-mc-62, 2021 WL 3075698, at *1 (D.D.C. June 22, 2021). The Supreme Court has identified five factors that "are relevant to any comity analysis": (1) the importance of the information requested to the litigation, (2) the specificity of the request, (3) whether the information originated in the United States, (4) whether there are other available means of getting the information, and (5) whether and to what extent noncompliance would undermine important interests of the United States or compliance would undermine important interests of the state where the information is located. *Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Ct. for the S. Dist. of Iowa*, 482 U.S. 522, 544 n.28 (1987); *see also* Restatement (Third) of Foreign Relations Law § 442(1)(c) (Am. L. Inst. 1987) (same). Where the foreign state has agreed to the procedures of the Hague Evidence Convention, the first three factors are the most important. *See Jaguar Land Rover*, 2021 WL 3075698, at *1 (citing Restatement (Third) of Foreign Relations Law § 473, reporter's note 5 (Am. L. Inst. 1987)); *see also Arcelik A.S. v. E.I. DuPont de Nemours & Co.*, 856 F. App'x 392, 399 (3d Cir. 2021) ("[S]ome of the international comity concerns noted by the Court [in *Aerospatiale*] are lessened when only use of the Hague [Evidence] Convention is at issue because all the relevant nations have consented to the treaty process."). As part of the comity analysis, the Court must also be satisfied that the proposed discovery "is relevant, not overbroad, and proportional to the needs of the case." *Wight v. Blumen*, No. 20-cv-81688, 2021 WL 8999538, at *2 (S.D. Fla. May 6,

2021); *cf. Aerospatiale*, 482 U.S. at 546 (noting that U.S. courts should protect foreign litigants from unnecessary or unduly burdensome discovery and "improper uses of discovery requests"). Although the party seeking the discovery bears the burden of persuading the court that proceeding under the Hague Evidence Convention "is necessary and appropriate," the "burden is not great . . . since the 'Convention procedures are available whenever they will facilitate the gathering of evidence by the means authorized in the Convention.'" *In re Baycol Prod. Litig.*, 348 F. Supp. 2d 1058, 1059 (D. Minn. 2004) (quoting *Tulip Computs.* 254 F.Supp.2d at 474).

### III.    DISCUSSION

As noted above, Oldham's primary argument against issuance of the letter of request is that the Court lacks the authority to do so because thus jurisdiction has no connection to the parties or events in the underlying litigation, the targets of the discovery requests, or the information sought. The Court therefore addresses that issue first, before engaging in the analysis of whether concerns of international comity counsel in favor or against granting the motion.

### A.    The Court's Authority

First, to the extent that Oldham argues that this Court has no authority to issue the letter of request because it lacks personal jurisdiction over him, that argument is rejected out of hand. "[I]ssuance of letters rogatory by its very nature does not require a U.S. court to have jurisdiction, meaning coercive authority, over the non-party from whom discovery is sought." *Lantheus Med. Imaging*, 841 F. Supp. 2d at 782; *see also id.* ("The issuing court does not need jurisdiction over the party from whom discovery is sought because it cannot compel compliance with the letters rogatory.  Instead, it makes a request of the foreign court, which maintains the authority to enforce the letters rogatory or not."); *In re 3M Combat Arms Earplug Prods. Liability Litig.*, No. 19-md-2885, 2020 WL 5578428, at *7 n.6 (N.D. Fla. Feb. 18, 2020) (stating, "There is no

question that a party attempting to obtain discovery form a foreign nonparty must resort to the Hague Evidence Convention's discovery procedures (where available) if the Court does not have personal jurisdiction over the nonparty," and collecting cases); *In re Chiquita Brands Int'l, Inc.*, Nos. 08-md-1916 *et al.*, 2015 WL 12601043, at *8 (S.D. Fla. Apr. 7, 2015) ("[R]esort to the Hague Evidence Convention [for issuance of letters of request] is particularly appropriate where, as here, a litigant seeks to depose a foreign non-party who is not subject to the court's *in personam* jurisdiction." (emphasis omitted)); *Gap, Inc. v. Stone Int'l Trading, Inc.*, No. 93 Civ 638, 1994 WL 38651, at *1 (S.D.N.Y. Feb. 4, 1994) (noting that the Hague Evidence Convention's procedures for discovery are, "in many cases[,] . . . the only means to request documents or testimony from foreign non-parties over whom the court has no personal jurisdiction and who are beyond the subpoena power of the court").

However, Oldham appears to be making a different argument: that this Court is without power to issue the requested letter of request because the matter should not have been brought before this Court in the first place. *See* ECF No. 19 at 1 ("Counsel for Ms. McCarthy has never attempted to explain why she is in this Court in the first place."), 2 ("Ms. McCarthy has not cited, and undersigned counsel is unaware of, any authority authorizing a party to register a 30+ year old judgment in a court some 2,000 miles away from its origin and thereafter seek judicial assistance from a federal Court with no knowledge of the underlying judgment by the issuance of a Letter Rogatory to a judicial branch in Hong Kong and relating to entities in South Africa and the British Virgin Islands."). That argument requires a discussion of 28 U.S.C. § 1963, the statute under which the Utah Judgment was registered in this Court.

Section 1963 provides:

A judgment in an action for the recovery of money or property entered in any . . . district court . . . may be registered by filing a certified copy of the

9

> judgment in any other district . . . when the judgment has become final by appeal
> or expiration of the time for appeal or when ordered by the court that entered the
> judgment for good cause shown. . . .   A judgment so registered shall have the same
> effect as a judgment of the district court of the district where registered and may be
> enforced in like manner.

28 U.S.C. § 1963.   A judgment registered in another district court "is the equivalent of a new judgment" from the court in which it is registered.  *Condaire, Inc. v. Allied Piping, Inc.*, 286 F.3d 353, 357 (6th Cir. 2002); *see also, e.g.*, *In re Estate of Ferdinand E. Marcos Human Rights Litig.*, 536 F.3d 980, 989 (9th Cir. 2008) ("[R]egistering a judgment under § 1963 is the functional equivalent of obtaining a new judgment of the registration court.").  As such, it can be enforced as a judgment of the registration court, and that court may utilize any of the tools generally allowed to aid in enforcement of a judgment, including the tools of discovery.  *See, e.g.*, *Condaire*, 286 F.3d at 357–58.  Thus, if the judgment was properly registered in this Court, Plaintiff is entitled to seek, and this Court has the power to grant, her request for discovery under the Hague Evidence Convention.  *See, e.g.*, *id.* at 357 ("Having determined that registration under § 1963 is the equivalent of a new judgment, we recognize that the statute must imply similar inherent powers to the registering court to enforce those judgments."); *Edgefield Holdings v. Gilbert*, No. 17-mc-74, 2018 WL 1138516, at *8 (N.D. Tex. Mar. 2, 2018) (noting that post-judgment discovery is available to a judgment creditor in the district where the judgment is registered); *Warner Bros. Int'l Television Distribution v. Golden Channels*, No. 02-cv-9326, 2005 WL 8162980, at *3–6 (C.D. Cal. Mar. 14, 2005) (holding that the Hague Evidence Convention allows issuance of letters of request to aid in the collection of a judgment).

Procedurally, "registration simply requires 'filing a certified copy of the judgment.'"  It is "a process which does not require any party to appear in court and in which no judicial action is taken." *Fidelity Nat'l Fin., Inc. v. Friedman*, 935 F.3d 696, 701 (9th Cir. 2019) (quoting 28 U.S.C.

§ 1963); *see also, e.g.*, *Brown v. Brockett*, No. 17-mc-2931, 2018 WL 3625341, at *2 (E.D.N.Y. July 6, 2018) ("The registration process is straightforward.  A party only needs a certified copy of the original judgment" and to file it in the registration court.); 11 Charles Alan Wright, *et al.*, Federal Practice and Procedure § 2787 (3d ed.) ("Registration is a 'ministerial act' in terms of the actual mechanical process of registering." (footnote omitted) (quoting *Juneau Spruce Corp. v. Int'l Longshoremen's & Warehousemen's Union*, 128 F. Supp. 697, 699 (D. Haw. 1955))).  Oldham makes no argument that the registration of the Utah Judgment here did not comply with the mechanical requirements of the statute and, indeed, the docket reflects that a certified copy of the renewed (and enforceable) Utah Judgment was filed in this Court.[7]  *See* ECF No. 1-1.  Given that the statute requires nothing more than that—and, more specifically, that it does not require judicial evaluation in the registration court of the propriety of the registration of an enforceable judgment, *see Fidelity Nat'l Fin.*, 935 F.3d at 701—Oldham's arguments that this Court has no power to preside over proceedings or issue orders related to the enforcement of that judgment seem destined to fail.

To be sure, "[w]hen an appeal is still pending, . . . leave to register the judgment outside the issuing district requires 'good cause shown'" to the issuing court.  *Chevron Corp. v. Republic*

---

[7] The Court notes that the judgment from the United States District Court for the District of Utah registered here dates from December 2014.  *See* ECF No. 1.  It was registered in this Court in January 2021, within the eight-year statute of limitations for a judgment under Utah law.  *See id.*; *see also* Utah Code Ann. § 78B-2-311 (West 2022) (setting eight-year statute of limitations for judgments).  Because the judgment was registered while still enforceable in Utah, the registered judgment is enforceable here until the District of Columbia statute of limitations runs.  *See Home Port Rentals*, 252 F.3d at 407 ("[W]hen a money judgment (1) is rendered in a federal district court located in one state, and (2) is duly registered in a district court located in another state, (3) at a time when enforcement of that judgment is not time-barred in either state, the applicable limitation law for purposes of enforcement of the registered judgment in the registration district is that of the registration state[.]"); *see also, e.g.*, *Wells Fargo Equip. Fin., Inc. v. Asterbadi*, 841 F.3d 237, 246 (4th Cir. 2016) (same).  The District of Columbia has set a twelve-year limitations period for judgments.  *See* D.C. Code § 15-101 (2022).  Thus, the registered judgment will be enforceable until January 2033.  *See, e.g.*, *Asterbadi*, 841 F.3d at 246 ("[W]ith the registered judgment functioning as a new judgment, the limitations period for enforcement runs from the date of registration.  This is the conclusion that every court of appeals that has construed § 1963 has reached.").  The Court notes too, although it is immaterial here, that Plaintiff renewed the judgment in Utah yet again in December 2021.  *See* ECF No. 18-1 at 101–02.

*of Ecuador*, 987 F. Supp. 2d 82, 84 (D.D.C. 2013).  That generally entails the judgment creditor

establishing "an absence of assets [belonging to the judgment creditor] in the judgment forum,

coupled with the presence of substantial assets in the registration forum." *Non-Dairy Exposure*

*Dietary Task Force v. Tagros Chem. India, Ltd.*, 309 F.R.D. 66, 69 (D.D.C. 2015) (quoting

*Cheminova A/S v. Griffin, LLC,* 182 F.Supp.2d 68, 80 (D.D.C.2002)).  However, no such showing

is required where, as here, the registered judgment is "final by appeal or expiration of the time for

appeal." 28 U.S.C. § 1963.  Rather, in this situation, Section 1963 allows registration of an

enforceable judgment "in *any other* district" without additional substantive requirements.[8]  *Id.*

(emphasis added).  Under the plain language of the statute, then, the registration was appropriate.

    The Court therefore holds that the judgment registered in this District is enforceable by this

Court, notwithstanding the fact that the litigants in the underlying litigation have no demonstrated

connection to this jurisdiction.

## B.    International Comity

    The Court therefore turns to what is often the heart of the matter in cases like these—

whether concerns of international comity counsel in favor of granting the request.  Here, on

balance, they do.

---

[8] The Ninth Circuit's first decision in *Fidelity National Financial, Inc.*, although addressing a different issue, is instructive as to the breadth of the plain language of Section 1963.  In that case, Fidelity, the judgment debtor, registered a judgment from the Central District of California in the District of Arizona in order to try to collect on the judgment. *Fidelity Nat'l Fin., Inc. v. Friedman*, 803 F.3d 999, 1003 (9th Cir. 2015).  The judgment registered in the District of Arizona expired under that state's five-year statute of limitations and that court rebuffed Fidelity's attempt to renew the Arizona judgment or re-register the California judgment.  *Id.*  Fidelity then "got creative" and registered the California judgment (which was still, apparently, enforceable) in the Western District of Washington and then registered *that Washington* judgment in the District of Arizona.  *Id.*  Relying on the precept that "a registered judgment has the 'same effect' as an original judgment and thus may itself be registered," the Ninth Circuit rejected the judgment debtors' argument that the court's reading of the statute led to an absurd result "because it enables a plaintiff to jump from jurisdiction to jurisdiction in seeking to recover on its money judgment."  *Id.* at 1002–03.  Rather, it held that the only limitation that the statute places on the registration of judgments (that are final by appeal or by the expiration of the time to appeal) is that they be valid monetary judgments as opposed to judgments for injunctive relief.  *Id.* at 1003.  Thus, the alleged end run around the Arizona statute of limitations was "irrelevant in view of the plain language of § 1963."  *Id.*

       1.       The Importance of the Information to the Litigation

Here, the relevant litigation is the action in this Court to enforce the judgment. *See, e.g.*, *Wells Fargo Equip. Fin., Inc. v. Asterbadi*, 841 F.3d 237, 244 (4th Cir. 2016) ("We thus construe § 1963 to provide for a new judgment in the district court where the judgment is registered, as if the new judgment had been entered in the district after filing an action for a judgment on a judgment. Accordingly, just as a new judgment obtained in an action on a previous judgment from another district would be enforceable as any judgment entered in the district court, so too is a registered judgment." (emphasis omitted)); *Home Port Rentals, Inc. v. Int'l Yachting Grp., Inc.*, 252 F.3d 399, 405 (5th Cir. 2001) ("[W]hen a money judgment rendered in one federal district court is registered in another federal district court at a time when the original judgment is still enforceable under the laws of both states, registration truly is the equivalent of a new judgment of the registration court for purposes of enforcement in the registration district." (emphasis omitted)); *Stanford v. Utley*, 341 F.2d 265, 268 (8th Cir. 1965) (Blackmun, J.) ("[R]egistration provides, so far as enforcement is concerned, the equivalent of a new judgment of the registration court."). Plaintiff's proposed discovery seeks information about the financial relationship between Oldham and/or the Oldham Companies and Defendant to try to determine whether Defendant had, or his estate has, assets available pay all or part of the judgment. The information that Plaintiff seeks is not merely relevant to the collection of the judgment, it is the focus of this enforcement action and—other than a bare reference, devoid of support, to a "fishing expedition," *see* ECF No. 19 at 4—Oldham does not appear to suggest otherwise.

Instead, Oldham seems to contend that that Plaintiff has not established a sufficient connection between Defendant and him to justify requiring a response to the discovery requests. *See* ECF No. 19 at 5–6. The Court disagrees. Plaintiff is seeking information relevant to

Defendant's finances.  Plaintiff has alleged—and Oldham has not disputed—that Defendant had a professional relationship with Oldham that existed both when the underlying RICO litigation was underway and after Defendant's death over 30 years later, which included Oldham's extension of loans to Defendant and discussions about business dealings between them.  *See* ECF No. 18-1 at 7, 10–11,  104–10; ECF No. 20 at 1–2, 13–14, 16.  She has further alleged—and Oldham has not disputed—that Defendant lived on premises owned by Oldham through a network of companies for years prior to Defendant's death.  *See id.*  The details of those arrangements are likely to be significant to Defendant's finances.  More, Oldham has represented to Plaintiff's counsel that he represents Defendant's estate.  That fact, alone, establishes a connection sufficient to justify taking discovery of Oldham.   Indeed, even Oldham can hardly deny that if he, as representative of Defendant's estate, establishes either that the estate has or does not have assets, that would be a crucial fact for Plaintiff's enforcement efforts in this Court.  The details of Defendant's past financial dealings with Oldham may also prove important to Plaintiff's efforts to ascertain where Defendant's assets—if there are any—might be located.

The Court thus finds that the first factor weighs in favor of granting the motion.

2.      Specificity of the Requests

The second factor also weighs in favor of granting the motion.  Plaintiff seeks production of a dozen categories of documents and a deposition on fourteen topics related to those categories. The requests are tailored to discover the details of Defendant's finances, specifically through his financial dealings with Oldham and the identified Oldham Companies.  As noted above, Plaintiff has established a sufficient connection between Oldham and those three companies to justify the inquiry sought.  The Court acknowledges that the time period for which the information is sought—from October 29, 1987, which is the date that Plaintiff's civil RICO action was filed in

the District of Utah, to the present—is expansive.  But Plaintiff has evidence that Oldham and/or

his firm acted as Defendant's attorney near that time and that Defendant and Oldham had financial

dealings "on and off" over an extended period of time.  *See* ECF No. 20 at 13–14, 16–18.

Crucially, Oldham has neither objected to the proposed time period nor suggested a more

targeted one.  Furthermore, if the appropriate judicial authorities in Hong Kong find the requests

overbroad, they may narrow them.  *See, e.g.*, *Lantheus Med. Imaging*, 841 F. Supp. 2d at 794

("[F]oreign courts charged with enforcing letters rogatory may limit enforcement of the discovery

device where appropriate."); *SEC v. Tourre,* No. 10 Civ. 3229, 2011 WL 350286, at *1 (S.D.N.Y.

Jan. 31, 2011) ("Suffice it to say, we leave to the German authorities the decision whether to honor

all, some or none of these requests."); *Tulip Computs.*, 254 F. Supp. 2d at 475 ("If Dell's document

requests are overly broad under the law of the Netherlands, as Tulip maintains, then the requests

will presumably be narrowed by the appropriate judicial authorities in the Netherlands before any

documents are produced. The Court is content that such officials will make the appropriate

determination under their own law." (internal citation omitted)).  In these circumstances, the Court

finds that the requests are sufficiently specific to counsel in favor of issuing the letter of request.

3.    Origin of the Information

Plaintiff does not assert that the information she seeks originated in the United States.  This

factor therefore weighs against granting the motion.  *See, e.g.*, *Jaguar Land Rover*, 2021 WL

3075698, at *2 (finding that the third factor weighed against issuing letters of request where the

information sought originated in Germany); *Lantheus Med. Imaging*, 841 F. Supp. 2d at 793 (same,

where information originated in Canada).

4.    Alternative Means of Procuring Information

Where a court finds that the third factor weighs against issuing a letter of request, "the

origin of the information can be 'counterbalance[d]' by the inability to obtain the information through an alternative means, thus favoring disclosure." *Lantheus Med. Imaging*, 841 F. Supp. 2d at 793 (alteration in original) (quoting *Gucci Am., Inc. v. Curveal Fashion,* No. 09 Civ. 8458, 2010 WL 808639, at *3 (S.D.N.Y. Mar. 8, 2010)); *see also Arcelik*, 856 F. App'x at 399 ("Although the information originated abroad and the District Court suggested this weighed against issuing the letters of request, this was overcome by the fact that there were no alternative means for DuPont to obtain the information."); *Jaguar Land Rover*, 2021 WL 3075698, at *2 (similar).  Here, as the Court found in its prior opinion, it lacks the authority to require Oldham to produce documents and submit to an examination.  *McCarthy*, 2022 WL 3038862, at *5.  Rather, "in order to seek discovery from Oldham—a nonparty foreign national residing in Hong Kong—Plaintiff was required to resort to the procedures set forth in the Hague Evidence Convention."  *Id.*  She has done so now.

Oldham argues that he has already responded to Plaintiff's "informal requests" for information.  ECF No. 19 at 5.  However, Plaintiff explains that those requests were quite limited and focused on learning the identity of the owner of the company of the residences in South Africa where Defendant had lived prior to his death.  ECF No. 20 at 5.  Once Oldham confirmed that he was the owner, his cooperation ceased.  *Id.* at 6.  To be sure, Oldham also asserted that Defendant had no assets when he died.  ECF No. 18-1 at 110.  But Plaintiff should be able to test that assertion in discovery.  *See, e.g.*, *Lantheus Med. Imaging*, 841 F. Supp. 2d at 793–94 (finding that this factor weighed in favor of issuing letters of request even where the target had previously responded to certain informal requests); *see also* Decl. of Anna St. John, ¶¶ 3–8, *Lantheus Med. Imaging. Inc. v. Zurich Am. Ins. Co.*, 841 F. Supp. 2d 769 (S.D.N.Y. 2012) (No. 10 Civ. 9371), ECF No. 39 (outlining the target's responses to informal requests for information and its later failure to

16

cooperate with such requests).

Therefore, this factor weighs in favor of granting the motion.

5.      National Interests

In connection with this last factor, the Court notes—although neither party did—that Hong Kong has made an official declaration pursuant to Article 23 of the Hague evidence Convention that it

> will not execute the 'Letters of Request issued for the purpose of obtaining pre-trial discovery of documents'.   The 'Letters of Request issued for the purpose of obtaining pre-trial discovery of documents' for the purposes of the foregoing Declaration include any Letter of Request which requires a person:
>
> 1) to state what documents relevant to the proceedings to which the Letter of Request relates are, or have been, in his possession, custody or power; or
>
> 2) to produce any documents other than particular documents specified in the Letter of Request as being documents appearing to the requested Court to be, or to be likely to be, in his possession, custody or power.

Declaration/Reservation/Notification of the Special Administrative Region of Hong Kong, https://www.hcch.net/en/instruments/conventions/status-table/notifications/?csid=493&disp= Resdn (last visited Nov. 9, 2022).  Many courts have noted that a reservation under Article 23— which can be much broader than the one here, stating only that a contracting state "will not execute Letters of Request issued for the purpose of obtaining pre-trial discovery of documents as known in Common Law countries, *see Aerospatiale*, 482 U.S. at 522 n.21, without the limitations to that sweeping statement added by Hong Kong—is not a "significant obstacle," as it "applies only to 'requests that lack sufficient specificity or that have not been reviewed for relevancy by the requesting court,'" *id.* at 564–65 (Blackmun, J., concurring in part) (quoting Bernard H. Oxman, *The Choice Between Direct Discovery and Other Means of Obtaining Evidence Abroad: The Impact of the Hague Evidence Convention*, 37 U. Miami L. Rev. 733, 777 (1983)). *See Metso*

*Minerals Inc. v. Powerscreen Int'l Dist. Ltd.*, No. 06-cv-1446, 2007 WL 1875560, at *2 (E.D.N.Y. June 25, 2007) (same); *Tulip Computs.*, 254 F. Supp. 2d at 474–75 (same).  The Court has already found the requests to be relevant and specific.

More, the interposition of that reservation merely underscores the fact that, "[w]hen a court orders resort to the [Hague Evidence] Convention . . . it commits the issue of whether compliance with the request would undermine important interests of the state where the information is located to the courts or other authorities of that state."  Restatement (Third) of Foreign Relations Law § 473 reporter's note 5.  In light of that authority—which includes, as noted above, the power to tailor the requests the receiving state will enforce—courts have declined to find that this factor weighs against issuance of a letter of request under the Hague Evidence Convention.  *See, e.g.*, *Jaguar Land Rover*, 2021 WL 3075698, at *2 (declining to assess the fifth factor because the question of subversion of the receiving state's interests is left to that state's authorities and granting the request to issue letters rogatory); *Tulip Computs.*, 254 F. Supp. 2d at 474–75 (granting a request for issuance of letters rogatory in part because officials in the receiving country will decide whether and how to enforce the discovery requests).

## CONCLUSION

The Court's analysis of issues of international comity militates in favor of issuing the letter of request that Plaintiff seeks.  Accordingly, Plaintiff's motion for issuance of a letter of request for international judicial assistance (ECF No. 18) is **GRANTED**.  It is further

**ORDERED** that Plaintiff shall promptly arrange with the chambers of the undersigned for execution of the letter of request and delivery of the executed letter to her counsel.

**SO ORDERED.**

Date: November 9, 2022

_____
G. Michael Harvey, United States Magistrate Judge

18